**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Case No. 5:24-cv-00706-BO**

DONNA BLUE, *individually, and on behalf of those similarly situated*,

Plaintiff,

v.

CUMBERLAND COUNTY HOSPITAL SYSTEM, INC. d/b/a CAPE FEAR VALLEY HEALTH SYSTEM,

Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CUMBERLAND COUNTY HOSPITAL SYSTEM, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**CONTENTS**


TABLE OF CASES AND AUTHORITIES .......... ii

NATURE OF THE CASE .......... 1

STATEMENT OF ALLEGED FACTS .......... 2

A. Cape Fear's Public Website at Issue in this Case .......... 2

B. Cape Fear's Patient Portal Not at Issue in this Case .......... 3

STANDARD OF REVIEW .......... 5

ARGUMENT .......... 6

I. Plaintiff's Claims Fail Because She Does Not Plausibly Allege Disclosure of Private Information. .......... 6

A. Plaintiff's Allegations that Cape Fear Disclosed Her Private Information are Conclusory and Unsupported. .......... 7

B. Plaintiff's Faulty Legal Theory and Reliance on Void Federal Guidance. .......... 10

II. Plaintiff's ECPA Claim Should be Dismissed With Prejudice. .......... 13

A. Cape Fear Was a Party to the Purported Communications. .......... 14

B. The Crime-Tort Exception Does Not Apply. .......... 15

III. Plaintiff's Contract Claims Should be Dismissed. .......... 19

A. Plaintiff's Breach of Express Contract and Breach of Implied Contract Claims Should be Dismissed. .......... 19

B. Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing Claim Should be Dismissed. .......... 22

IV. Plaintiff's Negligence Claim Should be Dismissed. .......... 23

V. Plaintiff's Breach of Fiduciary Duty Claim Should be Dismissed. .......... 26

VI. Plaintiff's Unjust Enrichment Claim Should be Dismissed. .......... 29

CONCLUSION .......... 30

CERTIFICATE OF WORD COUNT .......... 32

CERTIFICATE OF SERVICE .......... 33

## TABLE OF CASES AND AUTHORITIES

**Cases** **Page(s)**

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 U.S. Dist. LEXIS 149692
(M.D.N.C. Aug. 23, 2023) ........................................ 14, 15, 29, 30

*Am. Hosp. Ass'n v. Becerra*,
4:23-CV-01110, 2024 U.S. Dist. LEXIS 108847
(N.D. Tex. June 20, 2024) .................................................... 12, 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .................................. 8, 25

*Bicycle Transit Auth., Inc. v. Bell*,
314 N.C. 219 (1985) ................................................................... 22

*Black v. Littlejohn*,
312 N.C. 626 (1985) ................................................................... 27

*Braun v. Glade Valley School, Inc.*,
77 N.C. App. 83 (1985) ............................................................... 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ....................................................... 28

*Brush v. Miami Beach Healthcare Grp.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................................... 21

*Byrd v. Fat City Condo. Owners Ass'n*,
No. 3:22-cv-249, 2023 U.S. Dist. LEXIS 208792
(W.D.N.C. Nov. 20, 2023) .......................................................... 26

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......................................................... 16

*Charlotte Motor Speedway, Inc. v. Tindall Corp.*,
195 N.C. App. 296 (2009) ........................................................... 20

*Cordaro v. Harrington Bank, FSB*,
260 N.C. App. 26 (2018) ............................................................. 22

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............................... 7, 9, 10

*Doe v. Amgen, Inc.*,
No. 2:23-cv-07448, 2024 U.S. Dist. LEXIS 24859 (C.D. Cal. Jan. 29, 2024) ........ 9

*Doe v. Davita Inc.*,
No. 23-cv-01424, 2024 U.S. Dist. LEXIS 74958 (S.D. Cal. Apr. 24, 2024) ........ 9

*Doe v. Upperline Health, Inc.*,
No. 1:23-cv-01261, 2024 U.S. Dist. LEXIS 221634 (S.D. Ind. Sep. 24, 2024) ........ 10-11, 23

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ........ 5

*Gay v. Garnet Health*,
No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) ........ 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 14, 16

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430, 2014 U.S. Dist. LEXIS 36957 (N.D. Cal. Mar. 18, 2014) ........ 18

*Hager v. Smithfield E. Health Holdings, LLC*,
264 N.C. App. 350 (2019) ........ 28

*Henry v. Knudsen*,
203 N.C. App. 510 (2010) ........ 23

*Hetzel v. JPMorgan Chase Bank, N.A.*,
No. 4:13-CV-236-BO, 2014 U.S. Dist. LEXIS 176039 (E.D.N.C. Dec. 17, 2014) ........ 24

*J.R. v. Walgreens Boots All., Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020) ........ 20

*J.R. v. Walgreens Boots All., Inc.*,
No. 20-1767, 2021 U.S. App. LEXIS 31389 (4th Cir. Oct. 19, 2021) ........ 20, 24

*K.L. v. Legacy Health*,
No. 3:23-cv-1886, 2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ........ 7-8, 11, 23

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)........................................... 7

*McCulley v. Banner Health*,
No. CV-23-00985, 2024 U.S. Dist. LEXIS 85232
(D. Ariz. May 10, 2024)............................................................. 23

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674, 2023 U.S. Dist. LEXIS 182921
(E.D. Pa. Oct. 10, 2023) ..................................................... 25-26

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)..................................................... 5-6

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ... 8-9, 11, 13, 16, 20-21, 25

*Okash v. Essentia Health*,
No. 23-482, 2024 U.S. Dist. LEXIS 53126
(D. Minn. Mar. 26, 2024) ................................................... 16, 18

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021)........................................................ 6

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .................................................... 16

*Rezapour v. Earthlog Equity Grp., Inc.*,
No. 5:12CV105-RLV, 2013 U.S. Dist. LEXIS 92124
(W.D.N.C. July 1, 2013)............................................................. 22

*Robinson v. Am. Honda Motor Co.*,
551 F.3d 218 (4th Cir. 2009)........................................................ 5

*Rodriguez v. Fastmed Urgent Care, P.C.*,
No. 5:23-CV-403-D, 2024 U.S. Dist. LEXIS 130990
(E.D.N.C. July 24, 2024)............................... 13, 14, 15, 16, 17-18

*Santoro v. Tower Health*,
No. 22-4580, 2024 U.S. Dist. LEXIS 74348
(E.D. Pa. Apr. 24, 2024).................................................. 9, 19, 25

*Shaver v. Walker*,
2023 NCBC LEXIS 51 (N.C. Super. Ct. Mar. 31, 2023)............ 28

*Smart v. Main Line Health*,
No. 22-5239, 2024 U.S. Dist. LEXIS 103753
(E.D. Pa. June 10, 2024) .......... 9

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 11

*Snyder v. Freeman*,
300 N.C. 204 (1980) .......... 21

*Spillman v. Am. Homes of Mocksville, Inc.*,
108 N.C. App. 63 (1992) .......... 26

*Sykes v. Health Network Sols., Inc.*,
372 N.C. 326 (2019) .......... 26

*Twiford v. Waterfield*,
240 N.C. 582 (1954) .......... 29

*Vaughn v. Perea*,
No. 20-7532, 2021 U.S. App. LEXIS 36766
(4th Cir. Dec. 13, 2021) .......... 4-5

*Weaver v. Academy*,
No. 5:20-CV-593-FL, 2022 U.S. Dist. LEXIS 62002
(E.D.N.C. Apr. 4, 2022) .......... 21

*Weddle v. WakeMed Health*,
2023 NCBC LEXIS 162 (N.C. Super. Ct. Dec. 4, 2023) .......... 24, 30

*Wells Fargo Ins. Servs. USA. Inc. v. Link*,
372 N.C. 260 (2019) .......... 19-20

*Williams v. DukeHealth*,
No. L22-CV-727, 2024 U.S. Dist. LEXIS 58377
(M.D.N.C. Mar. 1, 2024) .......... 14, 15, 24

*Williams v. TMC Health*,
No. CV-23-434, 2024 U.S. Dist. LEXIS 178452
(D. Ariz. Sep. 30, 2024) .......... 19, 23

*Wing v. Town of Landis*,
165 N.C. App. 691 (2004) .......... 29

**Statutes**

15 U.S.C. § 45, Federal Trade Commission Act....................................24

18 U.S.C. § 2510 *et seq.*, Electronic Communications Privacy Act*passim*

18 U.S.C. § 2511 ..................................................................... 13-15, 17

42 U.S.C. § 1320d *et seq.*, Health Insurance Portability and Accountability Act..................................................................*passim*

42 U.S.C. § 1320d(6)..........................................................................6, 19

42 U.S.C. § 1320d-6(a)(3) .......................................................................15

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................3

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4-6

**Other Authorities**

45 C.F.R. § 160.103 ...............................................................................6

Defendant Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System ("Cape Fear"), by and through counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Donna Blue's ("Plaintiff") Complaint.

## NATURE OF THE CASE

Cape Fear, a non-profit regional hospital system based in Fayetteville, defends against Plaintiff's alleged belief that Cape Fear's publicly accessible website contained source code provided by Meta and Google (the "Technology"), which allegedly captured her activity on the public site and relayed that information to Meta and Google. While her Complaint is long on generalized allegations as to her counsel's assessment of Cape Fear's website, it is short as to Plaintiff's own interaction with the site. The scant facts Plaintiff does allege regarding that interaction are insufficient to state a plausible claim for relief, as a matter of law.

As an initial matter, each of Plaintiff's claims rests upon an unsupported foundational premise: that Plaintiff supposedly supplied private information—which her Complaint fails to identify—when interacting with Cape Fear's public website, and that this information was then disclosed to a third party. Since her Complaint fails to allege facts that plausibly support this premise, each of her claims fail, as a matter law.

Moreover, even if Plaintiff could overcome this barrier to recovery, her individual claims would fail as a matter of law, on multiple other grounds:

- <u>Violation of the Electronic Communications Privacy Act ("ECPA")</u>: Plaintiff's claim for violation of the ECPA, 18 U.S.C. § 2510 *et seq.*, fails as a matter of

law because that statute makes clear that it is not illegal for a party to intercept the party's own communications, and the crime-tort exception to the one-party consent rule does not apply.

- Breach of Express and Implied Contract: Plaintiff's claims for breach of express contract and breach of implied contract fall short because Plaintiff fails to plausibly allege the existence of a contract with Cape Fear, much less that any such contract was breached by her conclusory allegations.

- Breach of Implied Duty of Good Faith and Fair Dealing: Because Plaintiff's breach of express contract claim fails, so too does her claim for breach of the implied covenant of good faith and fair dealing.

- Negligence: Plaintiff fails to plausibly allege that she was owed a duty of care when she visited Cape Fear's publicly available website, much less that any such duty was breached.

- Breach of Fiduciary Duty: The Complaint fails to state a claim for breach of fiduciary duty because Plaintiff's use of a public website did not give rise to a fiduciary relationship.

- Unjust Enrichment: Plaintiff's unjust enrichment claim fails because she makes no allegation which reflects an expectation by Plaintiff or Cape Fear that she would be compensated for information she allegedly input into the public website.

Because these fatal deficiencies cannot be cured by amendment, Cape Fear respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

## STATEMENT OF ALLEGED FACTS[1]

### A. Cape Fear's Public Website at Issue in this Case

Cape Fear is a non-profit regional healthcare provider, with hospitals and healthcare facilities across southeastern North Carolina. Cape Fear maintains a publicly accessible website, https://www.capefearvalley.com/, which can be accessed

[1] Cape Fear treats the Complaint's factual allegations as true for purposes of its Motion but does not admit, and reserves the right to contest, such allegations. Cape Fear also does not intend to waive any of its affirmative or general defenses.

and used by patients and non-patients alike (the "Public Website"). Plaintiff does not allege that there is any private patient information accessible on the Public Website. To the contrary, visitors on the Public Website can, *inter alia*, find information regarding the location and offerings at Cape Fear facilities, search for career opportunities, review physician profiles, view general information about health conditions, or donate to the organization's philanthropic arm, the Cape Fear Valley Health Foundation. The Public Website is unauthenticated, meaning that visitors are not required to login or otherwise affirmatively identify themselves to use it.

Notwithstanding Rule 8(a)'s requirement that her Complaint contain a "short and plain statement of [her] claim[,]" the bulk of Plaintiff's Complaint consists of generic allegations without any specific connection to Plaintiff's own putative claims. (Compl. ¶¶ 1-19, 24-103, 115-321.) At page 30 of her pleading, Plaintiff first alleges facts regarding her interactions with the website. That allegation consists of one sentence of the 321 paragraphs in the Complaint, in which Plaintiff vaguely describes, in general terms, her use of the Public Website. (*Id.* ¶ 105.) Plaintiff says that she used the Public Website "to request and book doctor's appointments for herself as well as search for and communicate information related to her ongoing dialysis treatment, wellness checks, mental health treatment, and medications." (*Id.*) She does not otherwise endeavor to provide details regarding her use of the site, such as or specifying the nature, substance, timeframe, or frequency of her purported use.

B. <u>Cape Fear's Patient Portal Not at Issue in this Case</u>

As Plaintiff recognizes, certain online interactions—which directly relate to a

patient's medical care—are accessible only on a ***different*** website—the MyChart Patient Portal ("Patient Portal"), https://mychart.capefearvalley.com/. (Compl. ¶ 4.) The Patient Portal is a personalized, password protected page, which can be accessed by going to the website directly or through a link on Cape Fear's Public Website. Cape Fear patients may register for a Patient Portal account—and must login with a username and password—to communicate online with their physicians, retrieve healthcare records, request prescription renewals, sign up for research, and schedule appointments. Plaintiff does not allege that she registered for a Patient Portal account, much less that she visited the Patient Portal or entered sensitive or personal information via the Patient Portal.

Nor does Plaintiff allege that Cape Fear ever had the Technology installed on the Patient Portal. In fact, she concedes that her counsel "does not have [any] evidence" that Cape Fear "installs third-party trackers on its Patient Portal." (*Id.* at 2 n.4; *see id.* at 9 n.14.) In spite of her concession that she has no information which would suggest that Cape Fear ever used the Technology on its Patient Portal, Plaintiff nevertheless alleges that Cape Fear "purposely embedded and deployed the Meta Pixel on ... its Portal." (*Id.* ¶ 35.) To be sure, an allegation made upon information and belief coupled with a concession that there is no evidence to support the allegation, is not entitled to the presumption of truthfulness under Rule 12(b)(6). *See Vaughn v. Perea*, No. 20-7532, 2021 U.S. App. LEXIS 36766, at *4 (4th Cir. Dec. 13, 2021) (distinguishing "some amount of uncertainty" and "rank speculation" in evaluating allegation made upon information and belief and requiring that plaintiff

"ha[ve] sufficient data to justify interposing an allegation" on information and belief).

Even so, these deficits do not alter the analysis of Plaintiff's claim, since Plaintiff herself does not allege that she ever registered for a Patient Portal account, communicated with Cape Fear through the Patient Portal, or otherwise transmitted information via the Patient Portal. Instead, her claims are exclusively premised upon her purported interactions with the Public Website. (*Id.* ¶¶ 4, 105 (alleging she only "used Defendant's [Public] Website"), 107 (alleging only that she provided information "to Defendant via its [Public] Website"), 109 (confirming Plaintiff's communications at issue were "via the [Public] Website"), 114, 117.)

## STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion ... requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).[2] While "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," it does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

[2] Quoting/citing parentheticals omitted throughout unless otherwise noted.

## ARGUMENT

Plaintiff purports to assert seven claims on her own behalf and on behalf of putative class members: (i) violation of the ECPA, (ii) breach of express contract, (iii) breach of implied duty of good faith and fair dealing, (iv) breach of implied contract, (v) negligence, (vi) breach of fiduciary duty, and (vii) unjust enrichment. For support, Plaintiff offers a series of hypothetical, speculative, and conclusory allegations.

### I. Plaintiff's Claims Fail Because She Does Not Plausibly Allege Disclosure of Private Information.

The core assumption underlying each of Plaintiff's claims—*i.e.*, that Cape Fear disclosed her Protected Health Information ("PHI")[3] and/or Individually Identifiable Health Information ("IIHI")[4] purportedly entered on its Public Website—has not been plausibly alleged. Tellingly, in her 19,746-word, 321-paragraph, 77-page Complaint, Plaintiff dedicates only one sentence to this issue. Plaintiff's inability to allege facts in support of her contention that private information was disclosed is fatal to each of her claims under Rule 12(b)(6).

---

[3] The Health Insurance Portability and Accountability Act ("HIPAA"), which provides no private right of action, *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021), defines PHI as "individually identifiable" information that is "created or received by a health care provider" (or similar entities) that "[r]elates to the past, present, or future physical or mental health or condition of an individual[,]" 45 C.F.R. § 160.103.

[4] HIPAA limits the definition of IIHI to PHI that: (1) "relates to" an individual's "past, present, or future physical or mental health or condition," the individual's receipt of "health care," or the individual's "payment for" healthcare; *and* (2) "identifies the individual" or provides "a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6).

A. Plaintiff's Allegations that Cape Fear Disclosed Her Private Information are Conclusory and Unsupported.

Plaintiff's claims are predicated on the purported interception of entirely hypothetical communications that could be made by a "hypothetical patient," but "do not explain what information" she provided to Cape Fear. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023). Indeed, a substantial portion of the Complaint is devoted to providing examples of how the Technology operates, using examples of an unspecified individual's browsing on the Public Website. (*See, e.g.*, Compl. ¶¶ 56-57, 85-97.) Plaintiff does not allege that these were her own searches or that the searches were conducted after logging into the Patient Portal. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (dismissing ECPA claim based on "hypothetical data disclosures" that failed to demonstrate health information was disclosed to third parties in violation of HIPAA).

Nothing in the Complaint suggests which webpages Plaintiff herself visited on the Public Website, or the specific health information Plaintiff supposedly provided to Cape Fear that was disclosed to third parties. Only one sentence of the Complaint is apparently dedicated to describing Plaintiff's own supposed interactions with the Public Website. (*See* Compl. ¶ 105.) A passing allegation that Plaintiff used the Public Website to "search" for information related to "dialysis treatment, wellness checks, mental health treatment, and medications," (Compl. ¶ 105), is insufficient, *see, e.g., K.L. v. Legacy Health*, No. 3:23-cv-1886, 2024 U.S. Dist. LEXIS 206864, at *9 (D. Or. Nov. 14, 2024) ("Plaintiff alleges in her complaint that she used the Public Website to search for burn specialists and burn treatments. The generic search

queries created during such browsing activity, however, do not constitute PHI."); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing negligence and other claims where plaintiffs failed to allege "what, if any, medical information or medical records were transmitted or disclosed").

Plaintiff does not otherwise endeavor to provide details regarding her use of the Public Website, such as or specifying the nature, substance, frequency, or timing of her purported use. For instance, the Complaint fails to allege when Plaintiff purportedly shared confidential information through the Public Website. While Plaintiff alleges that she "has been a patient" of Cape Fear "since approximately 2019," and alleges in conclusory fashion that she "disclosed her Private Information" to Cape Fear "on numerous occasions," including in August of 2024, (Compl. ¶ 106), she fails to allege that this "Private Information" was "disclosed" via the Public Website, much less when any such purported disclosure occurred. Her Complaint also fails to allege that these communications took place on a page of the Public Website where the Technology was embedded.

Vague allegations, hypotheticals, and references to categories of protected information are insufficient to state a claim. Courts routinely dismissed claims similar to those asserted here when plaintiffs fail to identify the specific health information allegedly transferred to third parties. *See, e.g., Nienaber v. Overlake Hosp. Med. Ctr.,* 733 F. Supp. 3d 1072, 1080 (W.D. Wash. 2024) (dismissing negligence and ECPA claims where allegations that plaintiff used defendant's public website to schedule appointments, communicate with doctors, complete medical

forms, and review medical records were insufficient to plead defendant had disclosed her PII and PHI to Facebook); *Santoro v. Tower Health*, No. 22-4580, 2024 U.S. Dist. LEXIS 74348, at *3-5 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA and negligence claims where complaint lacked specific examples of what health information from plaintiffs was allegedly transferred to Facebook); *see also Cousin*, 681 F. Supp. 3d at 1123; *Doe v. Amgen, Inc.,* No. 2:23-cv-07448, 2024 U.S. Dist. LEXIS 24859, at *6 (C.D. Cal. Jan. 29, 2024). Simply put, the Complaint "consists of nothing more than bare-bone conclusions which are insufficient to withstand dismissal." *Smart v. Main Line Health*, No. 22-5239, 2024 U.S. Dist. LEXIS 103753, at *9 (E.D. Pa. June 10, 2024).

Equally problematic, Plaintiff fails to plead any facts showing that the Technology was operating on the specific webpages she visited. She does not offer a single factual allegation that plausibly supports that any of her activity on the Public Website was tracked or disclosed in the manner described in her counsel's general descriptions. *See Doe v. Davita Inc.*, No. 23-cv-01424, 2024 U.S. Dist. LEXIS 74958, at *6 (S.D. Cal. Apr. 24, 2024) ("While Plaintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta.").

Plaintiff's failure to sufficiently allege that she disclosed protected information via the Public Website—much less that the information was then disclosed to third parties—undermines the fundamental assumption upon which each of her claims is based.

B. Plaintiff's Faulty Legal Theory and Reliance on Void Federal Guidance.

Even if Plaintiff had provided these missing factual allegations, the result would be the same. The sparse and shallow factual allegations which are included in the Complaint—namely, that Plaintiff's claims are based upon her browser activity, purportedly collected by the Technology on the Public Website—confirm that Plaintiff is not entitled to relief. *See Cousin*, 681 F. Supp. 3d at 1124 ("Even assuming Plaintiffs had provided this missing information, … Plaintiffs [still] cannot maintain their claims based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information."). Tellingly, Plaintiff conflates the Public Website and the Patient Portal, collectively referring to both sites as the "Web Properties."[5] (Compl. ¶ 4.) However, on page 30 of the Complaint, Plaintiff finally reveals that her claims are based solely upon her use of the Public Website. (*Id.* ¶¶ 105, 107, 109, 114.)

Of course, searching for information on a publicly available website is fundamentally different than sharing information or otherwise interacting with a healthcare provider through a secure patient portal such as MyChart. *See Doe v. Upperline Health, Inc.*, No. 1:23-cv-01261, 2024 U.S. Dist. LEXIS 221634, at *6-7 (S.D. Ind. Sep. 24, 2024) (dismissing claims where complaint failed to sufficiently allege plaintiff submitted private information on defendant's public website because,

[5] Even though Plaintiff does not allege that she ever accessed the Patient Portal, she nevertheless hopes to bring claims relating to the Patient Portal on behalf of others, proposing a class which includes all individuals "whose PHI and PII was disclosed to a third party through Defendant's Web Properties without authorization or consent[.]" (Compl. ¶ 176.) The Complaint defines Web Properties to include the Patient Portal. (*Id.* ¶ 4.)

*inter alia*, she failed "to identify how she communicated her confidential medical information with her doctor on [defendant's] public website rather than the patient portal). Other courts have recognized that there is a "meaningful difference between searches conducted on a website accessible to anyone and a private portal provided to an individual patient." *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *27 (dismissing claims for violation of the ECPA, negligence, and unjust enrichment "insofar as they concern activities on Defendant's Public Website"); *see Nienaber*, 733 F. Supp. 3d at 1082; *Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories[.]"). Here, the Public Website only contains public-facing, unauthenticated webpages meant to provide general information about Cape Fear to the public at large.

Critically, the Public Website cannot distinguish between who is a patient and who is not a patient. Nevertheless, Plaintiff alleges that information about her interactions with the Public Website reveals IIHI because the Technology purportedly recorded her IP address. For support, she points to a December 2022 Bulletin by the Office for Civil Rights (the "Bulletin"), which stated that the use of online tracking technologies that transmit PHI can constitute a violation of HIPAA. (Compl. ¶¶ 29-31.) According to the Bulletin, if online tracking allowed a third party to know that someone from a certain IP address had accessed a healthcare provider's unauthenticated public webpage (meaning it does not require a log in), that alone

could constitute disclosure of PHI in violation of HIPAA.

In June 2024, however, a court rejected the Bulletin's sweeping conclusion and vacated the relevant portions of the Bulletin. *Am. Hosp. Ass'n v. Becerra*, 4:23-CV-01110, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). The court held that visiting a healthcare provider's unauthenticated public website—such as Cape Fear's Public Website at issue here—does not necessarily relate to an individual's health condition, receipt of health care, or payment for healthcare—the necessary elements for data to be within scope of HIPAA. *Id.* at *21. The court emphasized, "[w]ithout knowing information that's never received—*i.e.*, the visitor's subjective motive—***the resulting metadata [shared with third parties] could never identify that individual's PHI***." *Id.* at *42 (emphasis added). Indeed, the "mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information) with a visit to a webpage addressing specific health conditions or listing health care providers is not sufficient … to constitute IIHI." *Id.* at *20. The court also rejected a proposed revision of the guidance, which stated that information constitutes IIHI if it connects an IP address with a visit to a webpage with the intent to address the visitor's specific health condition or healthcare providers. *Id.* at *34.

While Plaintiff acknowledges that the Bulletin was vacated in relevant part, (Compl. at 8 n.10), she nevertheless relies upon it to support the position that Cape Fear purportedly disclosed her private information in violation of HIPAA because its public-facing, unauthenticated Public Website purportedly contained the Technology.

As the court in *Becerra* made clear, the mere fact that Plaintiff interacted with the Public Website can never establish that a particular interaction "relates to" Plaintiff's "past, present, or future physical or mental health or condition," her receipt of "health care," or her "payment for" healthcare. *Becerra*, 2024 U.S. Dist. LEXIS 108847, at *6, 36-39; *see, e.g., Nienaber,* 733 F. Supp. 3d at 1082 ("[W]here nothing but browsing activity on a publicly available website is transmitted, … the URLs, or the content of the pages located at those URLs, [do not relate] 'to the past, present, or future physical or mental health or condition of an individual.'"). To be sure, Cape Fear, as the owner of Public Website, does not know the intent of those who visit the Public Website, including Plaintiff.

Each of Plaintiff's claims should be dismissed for this independent reason.

## II. <u>Plaintiff's Electronic Communications Privacy Act Claim Should be Dismissed With Prejudice.</u>

Plaintiff's sole federal claim against Cape Fear arises under the Wiretap Act as amended by the Electronic Communications Privacy Act of 1986, or ECPA, which forbids any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept any ... electronic communication." 18 U.S.C. § 2511(1)(a). To state a claim under the ECPA, Plaintiff must plausibly allege that Cape Fear "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Rodriguez v. Fastmed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 U.S. Dist. LEXIS 130990, at *13 (E.D.N.C. July 24, 2024).

Here, Plaintiff's claim fails because there was no unauthorized interception,

use, or disclosure of an electronic communication in violation of the ECPA. Plaintiff alleges that Cape Fear was the intended recipient of her supposed communications through the Public Website. (Compl. ¶¶ 105-10.) This Court, along with other federal courts in North Carolina, have invariably dismissed ECPA claims against other healthcare providers alleged to have used the Technology on this same basis. *See Rodriguez,* 2024 U.S. Dist. LEXIS 130990, at *17; *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 U.S. Dist. LEXIS 149692, at *10-11 (M.D.N.C. Aug. 23, 2023); *Williams v. DukeHealth*, No. L22-CV-727, 2024 U.S. Dist. LEXIS 58377, at *25-26 (M.D.N.C. Mar. 1, 2024).

A. <u>Cape Fear Was a Party to the Purported Communications.</u>

Congress made it plain that it is not unlawful for a party to intercept its own communications. The ECPA is a one-party consent statute, providing in relevant part:

> It ***shall not be unlawful*** under this chapter for a person . . . to intercept a wire, oral, or electronic communication ***where such person is a party to the communication***, . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). "Courts interpreting this statute have held that mere receipt of a communication does not constitute a violation of § 2511(1)." *Williams*, 2024 U.S. Dist. LEXIS 58377, at *25-26 (quoting *Allen*, 2023 U.S. Dist. LEXIS 149692, at *10); *see, e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015).

Plaintiff cannot establish an unlawful interception because Cape Fear was a

party to her purported communications through the Public Website.[6] (*See* Compl. ¶¶ 105 (generally alleging Plaintiff "used Defendant's [Public] Website to … communicate information"), 106 (generally alleging that she voluntarily "disclosed" her information "to Defendant"), 107 (generally alleging that she voluntarily "was providing" her information to Cape Fear "via its [Public] Website"), 108.) On this basis alone, dismissal is warranted. *See Rodriguez*, 2024 U.S. Dist. LEXIS 130990, at *14; *Allen*, 2023 U.S. Dist. LEXIS 149692, at *11; *Williams*, 2024 U.S. Dist. LEXIS 58377, at *26.

B. The Crime-Tort Exception Does Not Apply.

Plaintiff tries to salvage her ECPA claim by invoking the crime-tort exception, which provides that a party to a communication may be liable if "such communication is intercepted ***for the purpose of*** committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiff suggests, in conclusory terms and without reference to a single factual allegation, that Cape Fear committed a criminal violation of HIPAA, in that it knowingly disclosed Plaintiff's IIHI to third parties.[7] (Compl. ¶ 216.) The crime-tort exception cannot save Plaintiff's claim because she has not plausibly alleged either that Cape Fear (i) acted with tortious or criminal intention separate from the act of interception or (ii) disclosed her IIHI in violation of HIPAA.

---

[6] To be clear, Plaintiff does not allege that Cape Fear unlawfully received the communications she purportedly initiated through the Public Website, but rather that, after receiving them, Cape Fear subsequently transmitted the communications to a third party.

[7] HIPAA makes it a crime to "knowingly … disclos[e] individually identifiable health information to another person." 42 U.S.C. § 1320d-6(a)(3).

### *i. Plaintiff Does Not Plausibly Allege Interception "For the Purpose of Committing" an Independent Crime or Tort.*

Even if Plaintiff plausibly alleged that she supplied private information via the Public Website and that IIHI was disclosed in violation of HIPAA, (*but see* Section I *supra*; Section II.B.ii. *infra*), the crime-tort exception still could not save her claim as a matter of law.

For Plaintiff to show that the crime-tort exception applies, she must plausibly allege facts which demonstrate that Cape Fear "intend[ed] to commit a crime or tort ***independent*** of the act of recording itself." *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added); *see In re Google Inc. Cookie*, 806 F.3d at 145 ("[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording."); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording."). Thus, where, as here, the alleged tort or unlawful conduct is based on the act of recording itself, the plaintiff "cannot satisfy the [ECPA]'s requirement of a separate tortious intent." *Caro*, 618 F.3d at 101; *see Rodriguez*, 2024 U.S. Dist. LEXIS 130990, at *16-17; *Nienaber*, 733 F. Supp. 3d at 1094-96; *Okash v. Essentia Health*, No. 23-482, 2024 U.S. Dist. LEXIS 53126, at *11 (D. Minn. Mar. 26, 2024). In other words, the wrongful act underlying the exception cannot be the act of interception itself.

Stripping away the legal conclusions in the Complaint, Plaintiff does not allege a single fact which would tend to show that Cape Fear intercepted communications

for the purpose of committing another, separate crime or tort. In fact, all of the facts alleged regarding Cape Fear's purported purpose point to one conclusion—a non-criminal, non-tortious purpose. By Plaintiff's account, Cape Fear supposedly embedded the Technology on its Public Website and intercepted communications "with a core goal of increasing profitability," (Compl. ¶ 34), "to increase the success of its advertising and marketing," (*id.* ¶ 35), and for commercial use or gain, (*id.* ¶¶ 221-22), not to commit a crime or tort.

In *Rodriguez v. Fastmed Urgent Care, P.C.*, Judge Dever was presented with nearly identical facts[8] and concluded that that the crime-tort exception could not save a patient's ECPA claim against a healthcare provider which allegedly used Meta's Pixel Technology. 2024 U.S. Dist. LEXIS 130990, *16-17. As with Plaintiff here, the *Rodriguez* plaintiff offered only legal conclusions and alleged that the defendant's purpose in using the Pixel Technology was "knowingly disclosing and releasing [IIHI] to Meta for commercial purposes without consent, in violation of HIPPA." *See* Compl. ¶ 63, *Rodriguez*, No. 5:23-CV-403-D (July 25, 2023). In declining to apply the crime-tort exception, the Court emphasized that a complaint must include ***non-conclusory allegations*** that the "communication [wa]s intercepted ***for the purpose of*** committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Rodriguez*, 2024 U.S. Dist. LEXIS 130990, at *16 (quoting 18 U.S.C. § 2511(2)(d)). Even viewing the allegations in the light most

[8] Unlike here, the plaintiff in *Rodriguez* alleged that she used the defendant's "MyChart portal to message doctors, view doctor's notes, schedule appointments, and review her medication." *Rodriguez*, 2024 U.S. Dist. LEXIS 130990, at *14.

favorable to the plaintiff, the Court concluded, the defendant "intercepted and disclosed the … information for commercial use or gain, not to commit a crime or tort." *Id.*; *see In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 U.S. Dist. LEXIS 36957, at *69 n.13 (N.D. Cal. Mar. 18, 2014) (noting crime-tort exception "cannot apply where the interceptor's [alleged] purpose has plainly not been to perpetuate torts … but to make money").

The same holds true here. Plaintiff has not plausibly alleged that Cape Fear used the Technology for a tortious or criminal purpose independent of the alleged interception. To the contrary, according to Plaintiff, Cape Fear's purported use of the Technology was in furtherance of the "core goal" of "increasing profitability." (Compl. ¶¶ 34-35, 221-22.) Her unadorned, self-serving conclusions leveled in an effort to satisfy the crime-tort exception "do not suffice." *Rodriguez*, 2024 U.S. Dist. LEXIS 130990, at *15. Therefore, even if Plaintiff had plausibly alleged a violation of HIPAA, the crime-tort exception still does not apply as a matter of law. *See, e.g., Okash*, 2024 U.S. Dist. LEXIS 53126, at *11 ("[Plaintiff] alleges that [defendant] acted for the purpose of criminally violating HIPAA and tortiously invading [his] privacy. But because neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply.").

*ii. Plaintiff Has Not Plausibly Alleged a Violation of HIPAA.*

Setting aside this body of caselaw detrimental to Plaintiff's legal theory, the crime-tort exception cannot apply here for the separate and independent reason that Plaintiff has not even plausibly alleged a violation of HIPAA. Plaintiff has not plausibly alleged that she communicated IIHI with Cape Fear, much less that her

IIHI was knowingly disclosed. HIPAA limits the definition of IIHI to PHI that: (1) "relates to" an individual's "past, present, or future physical or mental health or condition," the individual's receipt of "health care," or the individual's "payment for" healthcare; ***and*** (2) "identifies the individual" or provides "a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6). While both of these conditions must be satisfied for information to qualify as IIHI, neither is plausibly alleged here as discussed in Section I *infra. See, e.g., Williams v. TMC Health*, No. CV-23-434, 2024 U.S. Dist. LEXIS 178452, at *9 (D. Ariz. Sep. 30, 2024) (dismissing ECPA claim for multiple independent reasons, including that healthcare defendant's public "Website cannot distinguish between who is a patient and who is not a patient"); *Santoro*, 2024 U.S. Dist. LEXIS 74348, at *8 (dismissing ECPA claim where "complaint lack[ed] specific examples of what HIPAA-protected information from plaintiffs was transferred to Meta").

## III. Plaintiff's Contract Claims Should be Dismissed.

Plaintiff asserts claims for breach of express contract, breach of implied contract, and breach of the covenant of good faith and fair dealing, all of which arise out of or relate to Cape Fear's Joint Notice of Privacy Practices and are fatally flawed.

### A. Plaintiff's Breach of Express Contract and Breach of Implied Contract Claims Should be Dismissed.

Plaintiff's attempt to transform her use of the Public Website and Cape Fear's Joint Notice of Privacy Practices into some sort of contractual relationship, whether express or implied, fails as a matter of law. The elements of a claim of breach of contract are: "(1) existence of a valid contract and (2) breach of the terms of the

contract." *Wells Fargo Ins. Servs. USA. Inc. v. Link*, 372 N.C. 260, 276 (2019). Plaintiff fails to sufficiently plead either of these elements.

Plaintiff has not alleged existence of a valid contract. Rather than identifying an actual valid contract, Plaintiff pleads in conclusory fashion that she and other putative class members either "entered into valid and enforceable express contracts or were third-party beneficiaries of valid and enforceable express contracts." (Compl. ¶ 233.) While Plaintiff suggests that these supposed contracts were "embodied in multiple documents," she only identifies Cape Fear's Notice of Privacy Practices. (*Id.* ¶ 238.) The Notice of Privacy Practices, according to Plaintiff, amounts to both an "express contractual obligation" and an "implied contract[]"[9] which required Cape Fear to protect the privacy of Plaintiff's "Private Information" and PHI. (*Id.* ¶¶ 238, 284.)

As a matter of law, the Notice of Privacy Practices "cannot create contractual obligations because [healthcare providers] are required by law to comply with HIPAA without receiving consideration from plaintiffs." *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 559 (D.S.C. 2020). Where, as here, a "privacy policy 'does not contain any exchange [of promises],' no enforceable contract exists.'" *J.R. v. Walgreens Boots All., Inc.*, No. 20-1767, 2021 U.S. App. LEXIS 31389, at *13 (4th Cir. Oct. 19, 2021) (affirming dismissal of claims for breach of express and implied contracts based upon notice of privacy policy); *see Nienaber*, 733 F. Supp. 3d at 1092

[9] "There can be no implied contract where there is an express contract between the parties in reference to the same subject matter." *Charlotte Motor Speedway, Inc. v. Tindall Corp.*, 195 N.C. App. 296, 297 (2009).

("Because privacy notices serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, they are not contractual in nature."); *Brush v. Miami Beach Healthcare Grp.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (noting notices of privacy practices required by HIPAA "cannot create contractual obligations.").

Additionally, Plaintiff does not adequately allege mutual assent—or a meeting of the minds—with Cape Fear on any specific data security or privacy-related obligations. *See Snyder v. Freeman*, 300 N.C. 204, 218 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds."); *Braun v. Glade Valley School, Inc.,* 77 N.C. App. 83, 89 (1985) (noting that a contract will only be valid if the parties' minds "meet as to all essential terms"). Here, Plaintiff does not allege that she consented to Cape Fear's Notice of Privacy Practices, which supplies a separate basis for dismissal. *See Gay v. Garnet Health*, No. 23-cv-06950, 2024 U.S. Dist. LEXIS 168515, at *19 (S.D.N.Y. Sep. 16, 2024) (dismissing similar claim for breach of implied contract because "Plaintiffs cannot have assented to assurances described in the [defendant's privacy policy] if they did not view the Defendant's policies at the time of contract formation"). Plaintiff alleges only that she input information into a public facing website, without any allegation sufficient to establish a binding contract between her and Cape Fear as to such information. *See Weaver v. Academy*, No. 5:20-CV-593-FL, 2022 U.S. Dist. LEXIS 62002, at *33-34 (E.D.N.C. Apr. 4, 2022) (dismissing implied contract claim where complaint alleged only "plaintiffs' one-sided expectation").

Because there is no valid contract, there can be no corresponding "breach." Moreover, even if Plaintiff had adequately alleged the existence of a contract, whether express or implied, which imposed the contractual duties upon which her claims are based, she has still failed to allege that there was an actionable breach thereof. As discussed in Section I *infra*, Plaintiff has not plausibly alleged that Cape Fear disclosed her PHI. Plaintiff's contract claims are predicated on such a disclosure.

B. Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing Claim Should be Dismissed.

Because Plaintiff has not adequately alleged the existence of a contract (much less that any such contract was breached), her claim for breach of the implied covenant of good faith and fair dealing necessarily fails too. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985). "Where the claim for breach of good faith is 'part and parcel' of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim[.]" *Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12CV105-RLV, 2013 U.S. Dist. LEXIS 92124, at *10-12 (W.D.N.C. July 1, 2013); *see Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38-39 (2018) (holding that "the invalidity of [plaintiff's] breach of contract claim is ... fatal to his claim for breach of the implied covenant of good faith and fair dealing" where its basis was "identical to the basis for his breach of contract claim"). As Plaintiff's claim for breach of the covenant of good faith and fair dealing is premised upon the same factual allegations as and is thus "part and

parcel" of her fatally flawed claim for breach of express contract, it follows that this claim must necessarily fail for the same reasons.

## IV. <u>Plaintiff's Negligence Claim Should be Dismissed.</u>

To establish a viable negligence claim, a plaintiff must plausibly allege: "(1) defendant owed plaintiff a duty of reasonable care; (2) defendant breached that duty; (3) defendant's breach was an actual and proximate cause of plaintiff's injury; and (4) plaintiff suffered damages as the result of defendant's breach." *Henry v. Knudsen*, 203 N.C. App. 510, 513 (2010).

Plaintiff's negligence claim is deficient in several respects. Plaintiff has failed to put forth non-conclusory factual allegations of a duty that exists under the law. To be sure, merely operating a public facing website, accessible by patients and non-patients alike, which facilitates hospital administration did not give rise to a duty of care. *Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *14 (dismissing negligence claim based on hospital's alleged use of pixel technology to the extent the claim was based on plaintiff's interactions with defendant's "Public Website"); *McCulley v. Banner Health*, No. CV-23-00985, 2024 U.S. Dist. LEXIS 85232, at *37 (D. Ariz. May 10, 2024) ("Plaintiffs have failed to allege that Defendant owed a duty of care to Plaintiffs regarding their handling of the search terms inputted to their public website, even if they included PII and PHI."); *TMC Health*, 2024 U.S. Dist. LEXIS 178452, at *19 (concluding healthcare provider did not owe a duty to "people visiting its free, public website"); *Upperline Health*, 2024 U.S. Dist. LEXIS 221634, at *8.

To the extent Plaintiff alleges the legal conclusion that a duty of care "arose due to the special relationship between [Cape Fear] and its patients," (Compl. ¶ 292),

such duty is not supported by the facts alleged. Plaintiff's browsing activity on an informational, generally available website were not within the confines of the physician-patient relationship and were not necessarily related to the provision of medical care. While Plaintiff suggests that the duty of care arose because Cape Fear "required Plaintiff … to submit non-public personal information in order to obtain healthcare services[,]" (*id.* ¶ 290), she does not, and indeed cannot allege, that Cape Fear required Plaintiff to submit this information via its Public Website.

Plaintiff further suggests that Cape Fear had a common law duty arising from HIPAA and Section 5 of the Federal Trade Commission Act. (*Id.* ¶¶ 293-96.) Perhaps recognizing that a negligence *per se* claim based upon those statutory standards would be "untenable" at best, *Weddle v. WakeMed Health*, 2023 NCBC LEXIS 162, at *6 (N.C. Super. Ct. Dec. 4, 2023); *see Williams*, 2024 U.S. Dist. LEXIS 58377, at *33, Plaintiff artfully avoids labeling the claim as such. Neither HIPAA nor the FTC Act provide for a private right of action. *See Walgreens*, 2021 U.S. App. LEXIS 31389, at *13; *see also Hetzel v. JPMorgan Chase Bank, N.A.*, No. 4:13-CV-236-BO, 2014 U.S. Dist. LEXIS 176039, at *19 (E.D.N.C. Dec. 17, 2014) (dismissing negligence *per se* claims because the underlying statute did "not offer any explicitly stated mechanism for private rights of action"). It would be a clear overreach to use federal statutes as the foundation for a common law duty, particularly where the statutes themselves do not recognize a private right of action and instead rely upon public enforcement.

Moreover, Plaintiff does not plausibly allege that she shared any personal information when browsing the Public Website, which further undermines the

existence of a duty. Of course, Cape Fear could not owe a duty to protect information which, on the facts alleged, was never received. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d at 1080 (dismissing negligence claim because allegations that plaintiff used public website to schedule appointments, communicate with doctors, complete medical forms, and review medical records were insufficient to plead defendant had disclosed her PII and PHI). Absent factual allegations that actually identify what information the Technology collected, there is no basis to conclude that Cape Fear had a duty to safeguard the information. *See Santoro*, 2024 U.S. Dist. LEXIS 74348, at *3-5 (dismissing negligence claim where complaint lacked specific examples of what health information from plaintiffs was allegedly transferred); *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1064 (dismissing negligence claim where plaintiffs failed to allege "what, if any, medical information or medical records were transmitted or disclosed"). A negligence claim in this context is "critically undermined" by a plaintiff's "failure to adequately plead how [the defendant's] public website supposedly collected and transmitted individually identifiable health information." *Santoro*, 2024 U.S. Dist. LEXIS 74348, at *13.

Assuming, *arguendo*, that Plaintiff could plausibly allege a duty was owed, she fails to plead facts sufficient to establish a breach or causation because she does not to plausibly allege that Cape Fear disclosed her unidentified personal information to a third party. *See id.* Without specific allegations about what information Plaintiff transmitted via the Public Website (and the consequences of those searches), Plaintiff cannot adequately plead either element. *See Murphy v. Thomas Jefferson Univ.*

*Hosps., Inc.,* No. 22-4674, 2023 U.S. Dist. LEXIS 182921, at *12 (E.D. Pa. Oct. 10, 2023) (finding causation allegations insufficient where plaintiffs failed to describe, the "content, timing, or number of the alleged communications").

Finally, Plaintiff's attenuated and speculative allegations of damages are insufficient under the *Iqbal* and *Twombly* standards to establish the necessary element of damages in this claim. Plaintiff's negligence claim should be dismissed for failure to state any of the necessary elements under North Carolina law.[10]

## V. **Plaintiff's Breach of Fiduciary Duty Claim Should be Dismissed.**

Plaintiff's fiduciary duty claim fails as a matter of law because she does not sufficiently allege a fiduciary relationship with Cape Fear, or that Cape Fear breached any such duty. "To establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019). There are only two types of fiduciary relationships:

> (1) those arising from legal relations such as attorney and client, broker and client, partners, principal and agent, trustee and cestui que trust (de jure fiduciary relationship), and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other (de facto fiduciary relationship).

*Byrd v. Fat City Condo. Owners Ass'n*, No. 3:22-cv-249-MOC-DCK, 2023 U.S. Dist. LEXIS 208792, at *17 (W.D.N.C. Nov. 20, 2023). Plaintiff has not adequately alleged

[10] To the extent the Court finds Plaintiff adequately alleged that Cape Fear's Joint Notice of Privacy Practices gave rise to some contractual duty, her negligence claim is barred by the economic loss rule. *See Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65 (1992).

the existence of either a *de jure* or *de facto* fiduciary relationship. Moreover, for the reasons discussed above, even if a fiduciary duty existed, it was not breached.

A *de jure* fiduciary duty is not present here. While a fiduciary relationship may exist between a doctor and patient, such duty "is predicated on the fundamental proposition that the physician possesses special knowledge and skill in ***diagnosing and treating diseases and injuries***, which the patient lacks, and that the patient has sought and obtained the services of the physician ***because of*** such special knowledge and skill." *Black v. Littlejohn*, 312 N.C. 626, 645-46 (1985) (emphasis added). Here, Plaintiff does not allege that a fiduciary duty arose out of any diagnosis or treatment she received. Instead, Plaintiff alleges in a conclusory fashion that a fiduciary relationship existed "in light of the special physician-patient relationship between Defendant and Plaintiff." (Compl. ¶ 307.) Although Plaintiff alleges she is a patient, the fiduciary duty she seeks to impose does not arise out of the patient-physician relationship. Her allegations concerning the alleged collection and transmission of data from Cape Fear's Public Website do not involve the diagnosis or treatment of diseases or injuries or the specialized knowledge of a doctor. While Plaintiff's claims are tangentially connected to healthcare services, a *de jure* fiduciary duty does not extend to all services related to the provision of healthcare, such as a hospital's alleged collection and use of personal information on its public website. The Complaint is devoid of specific sensitive PHI provided in the course of the patient-physician relationship at issue in this case.

The Complaint does not allege that a *de facto* fiduciary relationship existed

between Plaintiff and Cape Fear, nor does it allege facts which would support that conclusion. Indeed, "the facts required to establish such a relationship are exacting," including the requirement of "dominat[ion] to the point of being essentially helpless in the defendant's hands." *Shaver v. Walker*, 2023 NCBC LEXIS 51, *21-24 (N.C. Super. Ct. Mar. 31, 2023). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 347-48 (4th Cir. 1998). It is illogical to argue any duty of care, much less the high duty of care created by the fiduciary relationship, exists regarding information Plaintiff voluntarily input into Cape Fear's public-facing website, which is just as accessible to Plaintiff as it is to any internet user in the world. "While it is true that the provision of confidential information places confidence in the recipient, that alone does not create a fiduciary duty." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 359 (2019). Something more is needed to meet the "demanding" standard to allege a *de facto* fiduciary duty. *See Shaver*, 2023 NCBC LEXIS 51, at *21. For that reason, cases finding a *de facto* fiduciary duty are "conspicuous" due to "the sheer level of control one party was alleged to have wielded over the other, often as the result of some infirmity or special need." *Id.* at *24. Here, Plaintiff does not allege any sort of infirmity or special need. Instead, Plaintiff alleges she voluntarily input information (which has yet-to-be-identified) on Cape Fear's Public Website. To find a special relationship on the barebone factual allegations in Plaintiff's Complaint would

transmute any entity that maintains a website capable of receiving an individual's personal information into a fiduciary. That is not what North Carolina law provides.

## VI. Plaintiff's Unjust Enrichment Claim Should be Dismissed.

Plaintiff pleads a deficient unjust enrichment claim in the alternative to her deficient breach of contract claims. "A claim of unjust enrichment requires that '(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously.'" *Allen*, 2023 U.S. Dist. LEXIS 149692, at *7-8. "[T]he mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play." *Id.* "North Carolina caselaw 'typically contemplates unjust enrichment as an appropriate remedy only in situations where the complaining party intentionally and deliberately undertook an action with an expectation of compensation or other benefit in return.'" *Id.*

Here, Plaintiff alleges that she conferred a benefit upon Cape Fear by supposedly providing information while using the Public Website. (Compl. ¶ 313.) Notably, Plaintiff does not, and indeed cannot, allege that she had an expectation that she would be compensated for the benefit supposedly conferred, namely the information she purportedly provided while using Cape Fear's Public Website. *See Twiford v. Waterfield*, 240 N.C. 582, 585 (1954) (requiring "mutual understanding" that "payment was intended on the one hand and expected on the other"); *Wing v. Town of Landis*, 165 N.C. App. 691, 693 (2004) (confirming unjust enrichment must be supported by allegations showing "both parties understood that services were rendered with the expectation of payment"). Thus, Plaintiff's alleged provision of

personal information on the Public Website cannot form the basis for a plausible claim for unjust enrichment. *See, e.g.*, *Weddle*, 2023 NCBC LEXIS 162, at *15 (dismissing unjust enrichment claim against hospital for use of Pixel because plaintiffs failed to "allege that they expected to receive any other compensation or benefit, apart from medical services, in return for their personal information").

Plaintiff appears to separately allege that she paid money to Cape Fear for medical services to support her unjust enrichment claim. (Compl. ¶ 317.) Critically, however, Plaintiff does not allege that Cape Fear failed to provide medical services in exchange. In other words, Plaintiff effectively concedes that she received exactly what she paid for, and for that reason, cannot claim that Cape Fear was unjustly enriched by the alleged payments she made for medical treatment. *See, e.g.*, *Allen*, 2023 U.S. Dist. LEXIS 149692, at *8 (dismissing unjust enrichment claim under North Carolina law based on use of the Pixel where plaintiffs failed to allege they "did not receive the medical care they expected in return" for their personal information provided to defendant hospital).

In sum, Plaintiff makes no allegation which reflects an expectation by herself or Cape Fear that Plaintiff would be compensated for information supposedly collected by the Technology used on the Public Website. Her unjust enrichment claim must accordingly be dismissed.

## CONCLUSION

For these reasons, Cape Fear respectfully requests that the Court grant its Motion and dismiss Plaintiff's claims with prejudice.

Respectfully submitted, this the 28th day of February, 2025.

**K&L GATES LLP**


By: */s/Marla T. Reschly*
Marla T. Reschly (N.C. Bar No. 46706)
Daniel D. McClurg (N.C. Bar No. 53768)
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Phone: (704) 331-7400
Fax: (704) 331-7598
Email: marla.reschly@klgates.com
daniel.mcclurg@klgates.com

Michael J. Stortz (*pro hac vice* to be filed)
(C.A. Bar No. 139386)
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220
Michael.Stortz@klgates.com

***Attorneys for Defendant Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System***

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.2(f)(3), the undersigned hereby certifies that the foregoing memorandum contains fewer than 8,400 words, exclusive of the elements to be omitted from the word count per Rule 7.2(f)(1). Specifically, the foregoing memorandum contains 8,346 words, as reported by counsel's word processing software.

This the 28th day of February, 2025.

*/s/Marla T. Reschly*
Marla T. Reschly

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day either via transmission of Notices of Electronic Filing generated by the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notice:

David Matthew Wilkerson
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801
Dwilkerson@vwlawfirm.com
Attorney for Plaintiff Donna Blue

This the 28th day of February, 2025.

/s/Marla T. Reschly
Marla T. Reschly